Penso, by Next Friend, *v.* McCormick *et al.*

Judgment affirmed.

Filed Sept. 19, 1890.

———————

## No. 14,322.

## PENSO, BY NEXT FRIEND, *v.* McCORMICK ET AL.

NEGLIGENCE.—*Concealed Pitfall.*—*Injury to Infant.*—*Damages.*—*Dealing with Children.*—*Degree of Care Requisite.*—Where the proprietors of a saw-mill situated in the public part of a town, near to a public highway, had by their knowledge and acquiescence given license to children of tender years to use their uninclosed lot surrounding the mill as a play-ground, and without any warning to them or others, constructed a pitfall in the ground where such children were accustomed to play, which they filled with burning embers and which gave forth no signs of its condition, or the danger in stepping upon its covering, and while in this condition a child of tender years entered upon it, as he was accustomed to do, without any knowledge of its changed condition, and was severely burned and injured, they were liable under such circumstances to respond in damages. Greater care must be exercised in dealing with children of tender years than with older persons who have reached the age of discretion.

From the Carroll Circuit Court.

*J. Applegate* and *C. R. Pollard,* for appellant.

*J. A. Sims,* for appellees.

OLDS, J.—This is an action brought by the appellant against the appellees for damages resulting to William Penso, an infant of the age of eight, by falling into a pit of hot ashes and burning embers while crossing the mill-yard of the appellees.

Appellees demurred to the complaint for want of facts. The court sustained the demurrer, to which ruling the ap-

pellant excepted and prosecutes this appeal and asks a reversal on the ground that the court erred in sustaining the demurrer.

The complaint alleges the appellant, William Penso, to have been an orphan about eight years of age at the time of the happening of the grievance complained of, and that for seven years prior to that time he had resided with a family in the town of Rockfield, in Carroll county, Indiana; that the appellees were conducting, and for many years had conducted, a saw-mill in said town; that the mill was situated in the most public part of the town, or village, near to a public highway and railway station, in said town; that the grounds surrounding said mill were not and never had been enclosed, and were used by the citizens of town as a passage way from one street to another, and also used for a playground for the children of said town, including the appellant, Penso, with the knowledge, approbation and consent of the appellees; that for months immediately prior to the 21st day of May, 1887, the time of the injury to said appellant, there was a mound on said mill-grounds from four to five feet high, made and formed by the appellees of ashes and cinders before that time accumulated at the mill and deposited on the mill-grounds, from which mound of ashes all heat had escaped, and such mound constituted a favorite play-ground for the children of the town, including the appellant, where they were accustomed to gather and play up until said 21st day of May, 1887; that upon said day, without giving any notice to the appellant, or to the public generally, the appellees excavated and removed from one side of the base of said mound about twenty bushels of ashes and filled the cavity so made with embers and cinders, hot, glowing and burning, from the fire-box of the engine; that appellees erected no barriers about the smoldering mass of embers and cinders, nor did they give any warning that it was dangerous to step upon it; that in a very short time the entire surface ceased to give out light, heat and smoke, and

presented the appearance of the remainder of the mound, and to all appearance all parts of the mound were the same in condition and structure, but in fact that portion so recently deposited was a smoldering, burning heap beneath the surface, and while in such condition, on said day, the appellant was sent by the persons with whom he lived for the cows; that the cows were then and before that time accustomed to pasture on the commons in said town and the uninclosed land in and about said mill-yard; that appellant, while in search of the cows, passed in and attempted to cross said mill-yard, passing on to the top of the mound safely, and seeing nothing to admonish him of any danger or the condition of the recently deposited embers and cinders, in pursuing his course attempted to pass down upon the other side of the mound, when, without any fault upon his part, he stepped into the mass of burning embers and cinders and received very severe injuries.

The allegations of the complaint show that the appellees, in removing the ashes, embers and cinders from their saw-mill and depositing them on their uninclosed mill-yard, in a public place in the town and near to a public street, had built a mound, and that for several months prior to the time of appellant's injuries the embers had ceased burning, and the mound had cooled and was in a safe condition to pass over, and the citizens of the town had been accustomed to pass over it for months, and during which time the children of the town, including appellant, had been accustomed to play upon the mound so built of ashes, embers and cinders; that without any notice or warning the appellees, on the day of the injury, had excavated a hole or pit in one side of the heap or mound, and refilled it with hot and burning coals, embers and cinders, the top of which immediately cooled, and gave no signs of any change in the condition of the mound, or any warning of danger to those who had been accustomed to pass over or play upon the mound. And the question is presented whether, under such circumstances, the

owners of the mill were not required, in making such change and creating such a dangerous pit in such a public place and near to a public street, to give proper notice of the changed condition of the mound, and of the danger imminent from passing over it.

As a general rule the owner of land has the right to the sole use and occupation of it, but such use and enjoyment of it must be exercised with a due regard for the public good and with a reasonable and humane regard for the welfare and rights of others.

The case of *Young* v. *Harvey*, 16 Ind. 314, was brought to recover the value of a horse killed through the negligence of the defendant. The facts were: Harvey, the defendant, commenced digging a well upon a lot owned by him; he sunk it to a depth of six feet, being forty-two inches across, and then abandoned it. It was located in an uninclosed lot, near the line of a street, in a suburb of Indianapolis. It remained a long time in this condition, sometimes partly covered with loose boards. Stock was allowed to run at large, and did run at large on the commons in the vicinity of this lot, of which the lot formed a part. On a certain day the plaintiff's horse fell into the hole and was killed. As to whether the action could be maintained or not the court says :

" Whether it can be, or not, depends upon the degree of probability there was that such accident might happen from thus leaving exposed the partially dug well, considered, perhaps, in connection with the usefulness of the act or thing causing the danger. *Durham* v. *Musselman*, 2 Blackf. 96. If the probability was so strong as to make it the duty of the owner of the lot, as a member of the community, to guard that community from the danger to which the pit exposed its members, in person and property, he is liable to an action for loss occurring through his neglect to perform that duty. We think any reasonable man, of ordinary understanding and extent of observation of the ways of life, would

say that the probability of injury to others, under the circumstances, from leaving the well in question in the condition it was, was not only strong, but that it amounted almost to certainty."

The case of *Graves* v. *Thomas*, 95 Ind. 361, was brought to recover damages suffered by the plaintiff for falling into an excavation for a cellar recently made by the defendant upon a lot adjoining a street and sidewalk in the city of Terre Haute, the defendant having negligently failed to guard said excavation, or to place any signals to warn passers-by of the danger, it appearing that there had been a path diverging from the sidewalk and passing over the defendant's lot, which had been used by persons passing along the street for a number of years. The court in that case says:

" In the case at bar, we think that the fact that for a long period the public, using the sidewalk, had been permitted to use the place where the plaintiff fell as a part of the sidewalk, made it the duty of the defendant to guard the excavation made at that place ; and that the jury were authorized to find from the evidence that the plaintiff did not, by her own negligence, contribute to her injury."

In *Beck* v. *Carter*, 68 N. Y. 283 (23 Am. Rep. 175), it was held that where a person for a long time allowed a portion of his lot to be used as a part of the street, and made an excavation in his lot about ten feet from the street, by which a person was injured, he was liable.

In *Binford* v. *Johnston*, 82 Ind. 426, the court says: "There are many well-reasoned cases which, carrying the doctrine still further, hold that one who places a dangerous thing in a position where it is likely to cause injuries to others, is liable to a child who is injured, although he may be a trespasser."

In the case of *Harriman* v. *Pittsburgh, etc., R. W. Co.*, 12 N. E. Rep. 451 (Ohio), it is held that where a railroad company has for a long time permitted the public, including children, to travel and pass habitually over its

road at a given point, without objection or hindrance,·it should, in the operation of its trains and management of its road, so long as it acquiesces in such use, be held to anticipate the continuance thereof; and it is bound to exercise care accordingly, proportioned to the probable danger to persons using its road.   The injury in that case was caused by the explosion of a signal torpedo left upon the track, and the court, after a careful review of the authorities, says: " The defendant, knowing of the probable use of its roadway by children, from the previous habitual use thereof by the public, long acquiesced in by the defendant, ought reasonably to have anticipated such use by the plaintiff and other children ; and its servants, in placing and leaving the unexploded torpedo, an innocent looking, but highly dangerous and destructive, article, where they might reasonably anticipate plaintiff and other children would be likely to go and handle it, and be injured, thus placing a new and hidden danger in their way, without notice or warning, failed to use such care as a person of ordinary prudence would and ought under the circumstances."

In the case of *City of Indianapolis* v. *Emmelman,* 108 Ind. 530, the court says : " The excavation into which the appellee's son fell was made in Spruce street, at a point where it crosses Pleasant run.   It was made in the bed of a shallow stream, and left alone unguarded on a July day, with knowledge that children were accustomed to play in the vicinity. The city must be held to know that children are attracted to such a place in July weather.   They were not intruders.   It was gross carelessness on the part of the city, with such knowledge, to leave an unguarded pit filled with water, in the street, into which an unsuspecting child might fall."   The court, in the same case, further says :   " Conceding all that has been contended for in respect to the condition of the pit, the levee, and the street and run at the time and place of the sad occurrence, the fact remains that the city made an excavation in a street, at a place where it knew children liv-

ing in the vicinity were accustomed to play, and where they had a right to be, at all proper times, without being intruders upon the premises, or invaders of the rights of any one. In the absence of the workmen, that the children went into the shallow stream to play, was precisely what the appellant might have expected. It owed them the duty to guard the pit in the street so that they might not fall into it and perish. Neither the father nor mother knew of, nor had they reason to suspect, any danger at the place in question. It was, therefore, not negligence to permit the child to be, with another, as the mother supposed it was, at such a place so near its home."

It is a well recognized doctrine that persons are required to use greater care in dealing with children of tender years than with older persons who have reached the age of discretion, and that greater care is required to avoid injury to them even when they are trespassers. *Indianapolis, etc., R. W. Co.* v. *Pitzer*, 109 Ind. 179.

The facts as pleaded in this case show that the appellees, after having created the mound of ashes upon their uninclosed lot in a public place in the town near a public street, had for months known of and permitted its use by the public to pass over from one street to another, and as a playground for the appellant, a child only eight years of age, and other children of the town, which use they had known and acquiesced in to such an extent as we think amounted to a license to such children to use the same for such purpose ; and, under such circumstances, instead of using care to avoid injury to such children, they made an excavation and filled it with hot and burning embers, the top of which being exposed immediately cooled and presented its former condition upon the surface, but underneath was a hidden mass of burning embers and fire which, under the circumstances, it was but reasonable to suppose and to anticipate that children of tender years who were accustomed to use the same as a play-ground, and as a passage way, would enter

upon and into and be severely injured.   Under the facts alleged in the complaint, it was but reasonable to expect that would occur which did in fact occur, viz., that a child accustomed to pass over and play upon the heap, with the knowledge and acquiescence of the appellees, would enter upon and sink into the hidden pitfall constructed by the appellees, and be severely and dangerously burned and injured. We do not hold or intend to hold that the appellees would be liable for the ordinary use of their lot in piling hot ashes taken from their mill upon it in the usual way, or that persons are liable ordinarily for mere negligence in the use of their own property as against trespassers.   But the allegations of the complaint show a wanton disregard of the rights and safety of others.   It shows that the appellees had, by their knowledge and acquiescence, given license to children of tender years to use their uninclosed lot as a play-ground, and without any warning to them or others they constructed a pitfall in the ground where such children were accustomed to play, which they filled with burning embers, and which gave forth no signs of its condition or the danger in stepping upon its covering, and while in this condition the plaintiff, a child of tender years, entered upon it as he was accustomed to do, without any knowledge of its changed condition, and was severely burned and injured, and the appellees are liable, under such circumstances, to respond in damages.

The court erred in sustaining the demurrer to the complaint.

Judgment reversed, at costs of appellees, and for further proceedings in accordance with this opinion.

Filed Sept. 19, 1890.