PERE MARQUETTE RAILROAD COMPANY *v.* CHADWICK.

[No. 9,232.   Filed April 3, 1917.   Rehearing denied June 21, 1917.]

1. DEATH.—*Action by Father for Death of Child.—Pleading.— Complaint.*—In an action by a father against a railroad company for the death of a minor child, a complaint alleging that plaintiff, his wife and children resided in property owned by the wife, that defendant created a nuisance in proximity to plaintiff's home by depositing putrid and decaying offal on its right of way, and that the death of the child was caused by the unwholesome and poisonous vapors generated by such nuisance, and praying a recovery only for the loss of the child's services and for the expenses of last illness, states a cause of action for wrongful death, and not for damage to the realty owned by the wife, the allegations as to ownership being merely for the purpose of explaining the rightful presence of plaintiff and his child on the premises.  p. 97.

2. DEATH.—*Death of Minor Child.—Father's Right to Sue.*— Although a father and son reside in property owned by the wife, the father can maintain an action, independently of any right to recover for damage to property, for the death of a minor son caused by a nuisance maintained near the dwelling house.  p. 99.

3. DEATH.—*Action.—Nuisance.—What Constitutes.—Statutes.*— Although an action for wrongful death caused by a nuisance is not predicated upon §291 Burns 1914, §289 R. S. 1881, defining a nuisance, the statutory definition, which is broader than the common-law definition and includes, in addition to damage to property, injury to life, is applicable in determining what constitutes a nuisance.  p. 101.

4. DEATH.—*Death of Minor Child.—Elements of Damage.*—In estimating the damages of a parent for the death of his minor child, the value of the services of the child from the time of the injury until he becomes of age, less the cost of his support and the expense caused the parent because of the injury and death, should be considered.  p. 101.

5. NEW TRIAL.—*Grounds.*—*Excessive Damages.*—In an action for wrongful death, where there is some evidence to warrant the amount of recovery, and nothing to indicate that the jury acted from prejudice, partiality or corruption, it was not error for the trial court to deny new trial on the ground of excessive damages. p. 101.

From Marshall Circuit Court; *Smith N. Stevens,* Judge.

Action by George Chadwick against the Pere Marquette Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*E. D. Crumpacker, Grant Crumpacker, O. L. Crumpacker* and *Adam Wise,* for appellants.

*Theron F. Miller,* for appellee.

IBACH, P. J.—The complaint in this case charges that the plaintiff's wife is the owner of certain described real estate in Michigan City, Indiana, which was occupied by plaintiff, his wife and two sons. On May 15, and on other days following, defendant deposited on its right of way, at a point about 200 yards from such dwelling house, large quantities of putrid, decomposed and decaying manure and offal, and allowed it to remain there for a long period of time. Thereby a nuisance was created from which unhealthful, offensive and noxious odors and vapors were generated and emitted so that the air in and around such premises became and was during all the time aforesaid infected with poisonous matter and rendered unwholesome and unhealthful. During the month of August, 1909, one of plaintiff's sons became sick and, because of such nuisance and the unwholesome odors and vapors which were generated and emitted by the said nuisance, as aforesaid, he was prevented from regaining his health and he remained sick from that time until he died of tuberculosis December 11, 1910. The minority of appellee's son, his ability to earn money, and the amount of ex-

pense necessarily incurred by appellee in his efforts to cure his son are also averred. It is for the loss of the son's services and these expenses that he seeks recovery. The complaint was answered by a general denial. Trial was had, resulting in verdict and judgment for appellee for $1,250.

We have carefully read all the evidence produced at the trial, and we conclude that it tends to prove that appellee was the father of the deceased minor child; that such child was by reason of his sickness unable to perform any labor subsequently to December, 1909. Prior thereto he was earning $1.75 per day. The expense of supporting such child was from $100 to $150 each year. The expense for medicines and medical care and in sending him to the State of California for the betterment of his health was $1,000. That appellee and his son at the time of the commission of the acts complained of was residing on the lands described in the complaint; that the acts charged in the complaint were committed by appellant and that they affected the minor son of appellee so as to interfere with and prevent his recovery; and that the things done by appellant which amounted to the commission of a nuisance were continued by appellant after notice had been given to it of the effects of such acts upon appellee's family, including his said son.

Appellant in its motion for a new trial insists that the verdict of the jury is not sustained by sufficient evidence and is contrary to law. In support of these contentions it is urged that the theory of the complaint is that of an invasion of, and injury to, the property rights of appellee's wife; that such facts appear from the complaint itself and the evidence so shows; consequently appellee is in no position to maintain this suit.

Such contention would undoubtedly be correct if the prominent and controlling facts averred in the complaint supported appellant's position, and such theory was the one adopted by the trial court. It will be conceded that there are some averments in the complaint with reference to the ownership of the real estate and occupancy thereof which are unnecessary except for the purpose of explaining the rightful presence of appellee and his son at that particular place, and this it would seem was the only purpose of such averments, as the plaintiff does not allege any damage or injury to the real estate or ask to recover damages on account thereof. Such averments are consistent with, and we are inclined to concur in, the claim made by appellee that the suit is one for damages sustained by the father, who was rightfully present with his son on the particular premises described in the complaint, for the death of his son, not primarily because of any injury to the real estate, or a diminution of the rental value thereof, or for any interference with the comfortable enjoyment of the premises described, treating his injury as an incident thereto, but rather that the damages suffered were different in kind from those suffered by the owner of the property and wholly disassociated therefrom, not merely incidental but direct and positive, occasioned by the wrongful acts of appellant which constituted a nuisance.

Section 267 Burns 1914, §264 R. S. 1881, provides in part: "A father (or in case of his death, or desertion of his family, or imprisonment, the mother) may maintain an action for the injury or death of a child * * *." Except as provided in such statute the father, when living, is the only person who may maintain an action for the injury or death of his minor child. *Louisville, etc., R. Co. v. Lohges* (1892), 6 Ind. App. 288, 33 N. E. 449; *Chicago, etc., Stone Co. v. Nelson*

(1903), 32 Ind. App. 355, 69 N. E. 705; *Berry* v. *Louisville, etc., R. Co.* (1891), 128 Ind. 484, 28 N. E. 182.

Appellant has not cited, neither have we been able to find in this state, a single case wherein the identical question has been considered; and, where kindred

2. questions have been considered by the courts of other states, we find much confusion, both in the discussion and results reached. We conclude, however, from the examination we have made of the better-reasoned decisions in which a kindred principle has been involved that an independent action such as we have before us can be maintained and such is the apparent theory upon which this case proceeded throughout the trial. To hold otherwise would be to deny the father the right to recover the damages sustained by him on account of the wrongful death of his minor child occasioned by a nuisance created and maintained by appellant. In support of our conclusion see *Hosmer* v. *Republic Iron, etc., Co.* (1913), 179 Ala. 415, 60 South. 801, 43 L. R. A. (N. S.) 871, and note; *Fort Worth, etc., R. Co.* v. *Glenn* (1904), 97 Tex. 586, 80 S. W. 992, 65 L. R. A. 818, 104 Am. St. 984, 1 Ann. Cas. 270; *Shelby Iron Co.* v. *Greenlea* (1913), 184 Ala. 496, 63 South. 470; *Flynn* v. *Butler* (1905), 189 Mass. 377, 75 N. E. 730; *Wesson* v. *Washburn Iron Co.* (1866), 13 Allen (Mass.) 95, 90 Am. Dec. 181; *Fisher* v. *Zumwalt* (1900), 128 Cal. 493, 496, 61 Pac. 82; *Corely* v. *Lancaster* (1883), 81 Ky. 174.

In *Hosmer* v. *Republic Iron, etc., Co., supra,* the court said: "It is obvious that to maintain an action for an injury affecting the value of the freehold the plaintiff must have a legal estate. But if noxious vapors and the like cause sickness and death to one who has a lawful habitation in the neighborhood, no sufficient reason is to be found in the accepted definitions of nuisance, nor in that policy of the courts which would discourage

vexatious litigation, nor in the inherent justice of the situation, as we see it, why the person injured, or his personal representative in case of death, should not have reparation in damages for any special injury he may have suffered, although he has no legal estate in the soil.    Certainly a child has the right to live under his father's roof—is a lawful occupant of his father's home—and in our opinion he should be accorded the same measure of protection against the construction of nuisances in the neighborhood which are so noxious and long-continued as to materially affect his physical well-being."

In the case of *Fort Worth, etc., R. Co.* v. *Glenn, supra,* the court said:  "If a suit be brought for an injury to real estate caused by a nuisance it is clear that the plaintiff must show that he has some right which has been injuriously affected.   If the damage be to the right of those occupying the property at the time, he must prove title, or at least a right of occupancy.   If it be of such permanent character as to cause damage to an estate in reversion or remainder, the reversioner or re-mainderman, if he sue, must prove his title as such. But why should the owner of a house be allowed to re-cover damages for being made sick by a nuisance created in the vicinity thereof, and another lawful occu-pant be denied a remedy for a like reason?  *   *   * It seems to us that a conflict of opinion upon this ques-tion has arisen from confusing the damage which re-sults to property from a nuisance, with that special damage, such as sickness, which may result to an indi-vidual from a nuisance either public or private."

While in the present case the property was owned by the mother and occupied by the father and son by what may be termed mere sufferance, the principle announced in the above cases is applicable to the facts of this case.

Although this action is not predicated on the statute

(§291 Burns 1914, §289 R. S. 1881), such statute is
looked to for a definition as to what constitutes
3. a nuisance. Said section provides: "Whatever
is injurious to health, or indecent, or offensive
to the senses, or an obstruction to the free use of prop-
erty, so as essentially to interfere with the comfortable
enjoyment of life or property, is a nuisance, and the
subject of an action." So far as necessary to this case
such statute may well be read: Whatever is injurious
to health, or offensive to the senses, so as essentially
to interfere with the comfortable enjoyment of life is
a nuisance, and the subject of an action.

The definition which our legislature saw fit to enact
as to what shall constitute a nuisance is broader than
the comman-law definition of nuisance, and, in addition
to injury to property, includes also injury to life. In
states having similar statutes the decided cases recog-
nize that such definition would authorize an independ-
ent action for damages such as we have here without
regard to any legal or proprietory interest in the real
estate. See *Fisher* v. *Zumwalt, supra; Hosmer* v. *Re-
public Iron, etc., Co., supra.*

Appellant finally claims that the damages are excess-
ive. In estimating the damages of a parent for the
death of his minor child, the value of the serv-
4. ices of the child from the time of the injury until
he would have arrived at full age, less the cost
of his support and the expenses caused the parent be-
cause of the injury and death, should be considered.
*Pennsylvania Co.* v. *Lilly* (1881), 73 Ind. 252; *City of
Elwood* v. *Addison* (1900), 26 Ind. App. 28, 59 N. E. 47.
There was some evidence to warrant the amount
5. of the recovery under the rule above stated and
nothing to indicate that the jury acted from
prejudice, partiality or corruption; therefore the court
did not err in refusing a new trial on the ground of ex-

cessive damages. *Creamery, etc., Mfg. Co.* v. *Hotsen-piller* (1902), 159 Ind. 99, 105, 106, 64 N. E. 600. Judgment affirmed.

NOTE.—Reported in 115 N. E. 678. Death: measure of damages recoverable by parent for death of minor child by wrongful act, Ann. Cas. 1912C 58, 1916B 532, 13 Cyc 369; persons entitled to sue for death of minor, 13 Cyc 332.