**LUHMAN v. HOOVER.**
**No. 7574.**

Circuit Court of Appeals, Sixth Circuit.
Nov. 14, 1938.

E. D. Wells, of Grand Rapids, Mich. (Alexander, McCaslin & Cholette, of Grand Rapids, Mich., on the brief), for appellant.

Fred P. Geib, of Grand Rapids, Mich. (Wm. T. Stoops, of Indianapolis, Ind., and Fred P. Geib, of Grand Rapids, Mich., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of a judgment for personal injuries in favor of appellee. Appellant asserts that the court erred in denying his motion for directed verdict.

Appellant resides in Muskegon, Michigan, and during November, 1933, was engaged as a sub-contractor in the construction of state roads Nos. 31 and 50 in Indiana. He had headquarters in Indianapolis. On November 17, 1933, two Ford trucks, alleged to belong to appellant, and used in the road construction, were parked by a driver alleged to be appellant's employee, behind the home of Charles Voorhis, in Indianapolis, where the driver roomed. One truck was disabled, and its front wheels were secured on the back of the other truck for towing purposes. The trucks were parked in the same position for about a week. Some small children from the neighborhood used the bed of the tilted truck as a slide. On November 18, 1933, appellee, at that time aged twelve years and seven months, accompanied by Robert Ridenour, a somewhat younger boy, both being in the sixth grade at school, came over to the trucks, where the children were playing. Appellee and the Ridenour boy climbed into the cab of the tilted truck, which was unlocked. The Ridenour boy sat back of the wheel, and the two pretended that they were hauling coal. In an unfastened pocket on the left door of the cab there was an unlabeled tin box containing dynamite caps. The Ridenour boy took it and was about to throw it away when appellee asked for it. Appellee testified that he thought the caps were long tubing rivets, such as he had formerly used. He hid the box of caps in an abandoned building, and later took it out, threw away the box, and distributed some of the caps among his playmates at school. On his way home from school appellee encountered one of his friends raking and burning leaves, and, as he said, endeavored to frighten him by throwing one of the dynamite caps into the fire. Appellee said that the cap looked like a shell from a 22-caliber gun. The cap exploded, and appellee's eye was injured.

The only questions in the case are raised by the court's denial of motion for directed verdict.

Appellant contends that there was no proof that he owned the truck, or that his servant placed the dynamite caps there; that he was not negligent in any event for he owed no duty to a trespasser, and that the doctrine of attractive nuisance does not apply under the facts of this case; that the intervening trespass of Robert Ridenour, and not the negligence of appellant, if any, was the proximate cause of the accident.

Appellant admitted in his answer, and also testified, that he owned a Ford truck of the same type and year model as that in which the caps were found, and the official state records show that appellant applied for an Indiana license on such a vehicle. Neither in his answer nor in his testimony did he deny the ownership of the trucks described in the petition, but alleged that he did not know whether he owned them. None of his drivers was called to testify. He admitted that he owned a 1927 Ford truck of the model described, which could not be locked, having such an unfastened pocket on the left-hand side as that described in the petition and in the testimony. He testified that he had

in his employ as a truck driver one Cephas Atkinson, commonly referred to as Nick. Charles Voorhis, back of whose home the trucks were parked, testified that two men working for a construction company located in Northern Michigan roomed in his house in Indianapolis, and that one of them, called "Mick," drove a Ford truck which he parked in Voorhis' back yard. Appellant admits that dynamite caps are used in his work, but called no one in charge of such materials to testify.

Conceding that there is confusion in the names given for the truck driver and the man who roomed at Voorhis' house, that only the first name of the latter is given, and that it is not identical with the nick-name by which appellant testified that his driver was known, and bearing in mind the large number of Ford trucks capable of fitting the general description, we think that the case was properly submitted to the jury. On motion to direct a verdict the court must consider the evidence in the light most favorable to the party against whom the motion is made. Nieman v. Aetna Life Ins. Co., 6 Cir., 83 F.2d 753. The coincidence that the driver who lived at Voorhis' home worked for a construction company from Northern Michigan at the time appellant was working on the Indiana roads and had his headquarters in Indianapolis, the similarity in the names given, added to the description of the truck, the identity of its year model, and the admission that appellant's truck was similarly constructed, with an unfastened pocket, as described in the petition below, amount to more than a mere scintilla of evidence, and required a denial of the motion to direct a verdict upon appellant's first two contentions.

As to the legal questions raised by appellant, under the decision in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, there being no federal or state statute on this subject, the law of the state where the accident occurred, namely, Indiana, determines the liability. The general rule of obligation toward young children, even if they be trespassers, is stated in Penso v. McCormick, 125 Ind. 116, 25 N.E. 156, 9 L.R.A. 313, 21 Am.St. Rep. 211, as follows [page 158]:

"It is a well-recognized doctrine that persons are required to use greater care in dealing with children of tender years than with older persons who have reached the age of discretion, and that greater care is required to avoid injury to them, even when they are trespassers. Indianapolis P. & C. R. Co. v. Pitzer, 109 Ind. 179, 6 N.E. 310, 10 N.E. 70 [58 Am.Rep. 387]."

The usual presumptions are made in Indiana with reference to children up to the age of seven, and between seven and fourteen. As declared in Cleveland C. C. & St. L. Ry. Co. v. Klee, 154 Ind. 430, 56 N.E. 234, 235:

"Regarding the conduct of a child between the age when he is conclusively presumed to be incapable of negligence and the age when he is conclusively presumed to be negligent under the same circumstances that would reveal an adult's negligence, the law is neutral; it lays down no conclusive presumption. Of such a child it cannot be said, as a matter of law, that his age shows him either incapable or capable of negligence. That question is to be determined as a fact in every such case." Indianapolis, P. & C. Ry. Co. v. Pitzer, supra; Bottorff v. Southern Construction Co., 184 Ind. 221, 110 N.E. 977.

Under Indiana law, then, as declared in decisions of the highest court, since appellee and the Ridenour boy were under fourteen years of age, the question of their responsibility was rightly submitted to the jury. Cleveland, C. C. & St. L. Ry. Co. v. Klee, supra; Indianapolis P. & C. Ry. Co. v. Pitzer, supra; Bottorff v. Southern Construction Co., supra. The jury found that they were not responsible, and appellant is not relieved from obligation because of the fact that the caps were taken from his truck.

We agree with appellant that the decision of the instant case is not governed by the doctrine of attractive nuisance. However, this conclusion does not aid him. In Indiana, as in many other states, it is held that when one keeps a dangerous article exposed where children are likely to come in contact with it, and where such contact is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to occur, and is bound to take reasonable care to prevent it. Ft. Wayne & Northern Indiana Traction Co. v. Stark, 74 Ind.App. 669, 127 N.E. 460; Harris v. Indiana General Service Co., 206 Ind. 351, 189 N.E. 410. Dynamite caps are hazardous to persons of adult age, and much more so to children ignorant both of their use and of their danger. Since the disabled truck was parked for a week in a place ac-

cessible to children, leaving the dynamite caps in an unfastened pocket, appellant is liable for the injury if his negligence was the proximate cause thereof.

Appellant urges finally that even if he was negligent, the chain of causation was broken, and the independent responsible act of Robert Ridenour, who took the caps, proximately caused the injury. But the court fully instructed the jury upon the subject, and charged that
"the law does not hold children of immature age to the same degree of responsibility which is imposed upon adults or upon children of more mature years.

"You are instructed that the burden of showing that they were of sufficient mental and moral comprehension to understand the moral nature and probable consequence of their act is upon the defendant. You are instructed that if you find that the boys entered the truck with a full comprehension of the moral wrong involved in so doing, or took the caps knowing of the moral wrong involved in that act, or if you find that plaintiff had sufficient comprehension of the dangers involved in throwing an explosive substance into a bonfire to realize and appreciate the risk and danger involved in so doing, then plaintiff's case must fail, because the injury was not, in those events, the proximate result of the alleged negligent act of the defendant; and your verdict will in that case be for the defendant of 'No cause for action.' "

While appellant excepted to the portion of this charge which imposed the burden of proof as to the responsibility of the boys upon him, he did not except to any other portion of the charge upon this subject. By its verdict the jury found that Ridenour was morally irresponsible and not appreciative of the consequences of his act. Taking into consideration the playfulness and irresponsibility of children, the taking of the caps by Ridenour was an act such as might in the natural and ordinary course of things be anticipated as probable, and appellant's negligence was both the initiating and the continuing factor in the result. It was his carelessness which placed in motion the intervening acts of Ridenour, and continued throughout the transaction as a proximate cause. We are cited to no Indiana case holding the contrary. Bottorff v. Southern Construction Co., supra, was decided on demurrer, and is not in point upon this phase of the case.

The judgment is affirmed.